UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

PSYCHIC READERS NETWORK, INC.,    CASE NO.:

    Plaintiff,

v.

GENERAL MILLS, INC., THE
INTERPUBLIC GROUP OF COMPANIES,
INC., MCCANN WORLD GROUP, INC.,
AND JOHN DOES 1-10 INCLUSIVE,

    Defendants.
_____/

**COMPLAINT FOR COPYRIGHT AND TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, AND DECEPTIVE AND UNFAIR TRADE PRACTICES**

    Plaintiff, Psychic Readers Network, Inc., for its complaint against Defendants General Mills, Inc., The Interpublic Group of Companies, Inc., McCann World Group, Inc., and John Does 1 – 10 inclusive, (collectively "Defendants") alleges as follows:

**Jurisdiction and Venue**

    1.    This action arises under the United States Copyright Act, 17 U.S.C. §101 et seq., the Lanham Act, 15 U.S.C. §1051 et seq., and Florida law as to unfair competition, deceptive and unfair trade practices and unjust enrichment.

    2.    Jurisdiction of the subject matter of this action is conferred on this Court by 28 U.S.C. §§1331, 1338, and 1367.

    3.    Venue is proper in this judicial district pursuant to 28 U.S.C. §§1391 and 1400.

**The Parties**

4.     Plaintiff Psychic Readers Network, Inc. ("PRN") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Ft. Lauderdale, Florida.  PRN operates a business offering psychic-related services and products to the public including the production of television commercials, services and products featuring the psychic known as "Miss Cleo".  PRN offered services through a number of wholly-owned subsidiaries and affiliates including: (1) Radar Communications, Inc. ("Radar"), a corporation organized and existing under the laws of the State of Florida, with its principal place of business in Ft. Lauderdale, Florida, and (2) Oshun 5 Communications, Inc. ("Oshun"), a corporation organized and existing under the laws of the State of Florida, with its principal place of business in Ft. Lauderdale, Florida.  PRN is the holder of copyrights (including copyrights assigned to PRN by Radar) and trademarks (including trademarks assigned to PRN by Oshun) pertaining to the production of marketing materials, advertisements, products, promotions and services related to "Miss Cleo" visual, artistic and written works.

5.     Upon information and belief, Defendant General Mills, Inc., ("General Mills") is a corporation organized and existing under laws of the State of Delaware with its principal place of business located in Minneapolis, Minnesota. General Mills manufactures and sells various breakfast cereals, including without limitation French Toast Crunch Cereal, throughout the United States, including the States of Florida and New York, and within this district.

6.     Upon information and belief, Defendant Interpublic Group of Companies, Inc. ("IPG") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in New York, New York, and is the parent company of McCann World Group, Inc., ("McCann") an advertising agency. Upon further information and belief,

along with General Mills, Defendant IPG, through McCann, is responsible for the creation and content of videos and other advertisements incorporating the Miss Cleo trademark and copyrighted materials of Plaintiff that promote the sale of General Mills products, including without limitation French Toast Crunch Cereal, through social media, press releases and other forms of marketing throughout the United States, including the States of Florida and New York, and within this district.

7. Upon information and belief, Defendant McCann is a corporation organized and existing under the laws of Delaware with its principal place of business in New York, New York.

8. The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants sued herein as John Does 1 through 10, are unknown to Plaintiff, who therefore sues said defendants by such fictitious names (the "Doe Defendants"). Plaintiff will seek leave of Court to amend this complaint to state their true names and capacities when they have been ascertained. Upon information and belief, the Doe Defendants are liable to Plaintiff as a result of their participation in all or some of the acts hereinafter set forth.

## Background Facts

9. In the 1990's, Plaintiff commenced offering psychic reading services over the telephone. Plaintiff's business grew over the years and generated hundreds of millions of dollars in revenue through the sale of pay-per-call services and products.

10. In or around the late 1990's, Youree Dell Harris became one of many psychic advisors on the telephone for psychic services offered by Plaintiff. Plaintiff advised psychic advisors for its services that it was looking for an advisor to be a spokesperson for the company. Ms. Harris applied for the position. Plaintiff selected Ms. Harris and Plaintiff then created the

persona, coining the name that became known to the world as "Miss Cleo". Plaintiff retained all worldwide rights, title and interest to the Miss Cleo mark (the "Mark").

11. Commencing in or around 2000, Plaintiff created copyrighted television commercials, infomercials, press relations, campaigns, radio spots, books, tarot cards and numerous other materials all featuring Miss Cleo (the "Miss Cleo Creatives") promoting its psychic services and products. Plaintiff selected Ms. Harris's wardrobe and set design, wrote the scripts and otherwise was entirely responsible for the "look" the public associates with Miss Cleo (the "Look"). Plaintiff disseminated the Miss Cleo Creatives nationwide and was entitled to all revenues arising therefrom. Plaintiff spent in excess of $100 million in advertising and promoting its services through the Miss Cleo Creatives.

12. The frequency of the commercials airing on television was so prevalent that the Miss Cleo persona became famous. The Miss Cleo persona is so famous that the commercials were parodied on Saturday Night Live (by Tracy Morgan and Will Ferrell) and MAD TV (by Leona Campbell), among others.

13. Ms. Harris was paid a fee for her participation and held no rights to the Miss Cleo Mark, the Miss Cleo Creatives or the Look. Any services performed by Ms. Harris for Plaintiff were work for hire.

14. Radar obtained two copyright registrations for the Miss Cleo Creatives. *See* Exhibit 1 hereto. The Miss Cleo Creatives, including a tarot deck, book and other materials, were registered on August 7, 2002. The copyright registrations have been assigned to PRN. *See* Exhibit 2.

15. Plaintiff PRN produced countless copyrighted television commercials and infomercials featuring the Look and the Miss Cleo Creatives, and have copyright notices. PRN is also the holder of a registered copyright for a Miss Cleo Creative. *See* Exhibit 3.

16. Oshun applied for registration of the mark "Miss Cleo" with the United States Patent and Trademark Office. *See* Exhibit 4. Oshun has assigned all trademark rights to the "Miss Cleo" Mark to PRN. *See* Exhibit 5 hereto.

17. Upon information and belief, General Mills manufactured and sold French Toast Crunch Cereal in the United States from 1995 until it was discontinued in 2006.

18. Upon information and belief, General Mills retained Defendant IPG, one of the big four advertising agencies, to develop an ad campaign to promote the re-launching of French Toast Crunch Cereal on store shelves nationwide.

19. Upon information and belief, IPG designed its nationwide ad campaign for the re-launch of French Toast Crunch Cereal entirely around Miss Cleo. IPG capitalized on the notoriety, fame and nostalgia surrounding Miss Cleo to garner national attention to the return of the cereal.

20. Upon information and belief, IPG retained Ms. Harris to portray the Miss Cleo persona in commercials, through an interactive online game, graphic displays, and other marketing efforts. A social media campaign of Miss Cleo foreseeing General Mills bringing back French Toast Crunch Cereal was the centerpiece of the ad campaign for the return of the cereal.

21. In or around December 2014, Defendants released the campaign featuring Miss Cleo promoting French Toast Crunch Cereal. Not only did Defendants' campaign utilize Ms. Harris portraying Miss Cleo, but they also created video, audio, and graphic images identical to

the "Look" created by Plaintiff. Defendants utilized substantially similar set design, dress, and scripts to in essence copy the Miss Cleo Creatives to bring attention to the return of the cereal. The entire campaign is based on recreating the copyrighted Miss Cleo Creatives of Plaintiff in order to promote the sale of General Mills French Toast Crunch Cereal and other General Mills products.

22. Upon information and belief, on or around December 8, 2014, Defendants disseminated a press release announcing the return of French Toast Crunch Cereal. The press release provides, in part:

> "**Miss Cleo Predicts Cereal's Comeback**
> A 1990's pop culture icon herself, Miss Cleo, will once again consult her tarot cards, this time as part of a social and digital media program breaking in mid-December. The initiative includes a series of online videos, perfectly capturing Miss Cleo's unique style, in which she amazes callers with her confident prediction that they will be filling their bowls with the celebrated cereal. In January, Miss Cleo will return with intriguingly entertaining predictions."

A copy of the Press Release is attached hereto as Exhibit 6. The use of the Miss Cleo Mark is without the authorization of Plaintiff.

23. Upon information and belief, as a result of the press release and PR campaign, the story of Miss Cleo foreseeing the return of French Toast Crunch was picked up by scores of newspapers, television shows and other media across the country such as the Seattle Times, NPR, Denver Post, Today Show, Associated Press, New York Times, Yahoo!, inside.com and the Tampa Bay Times, to name a few. Promotion of the cereal through Twitter, Facebook, Tumblr and YouTube all featured Miss Cleo and access to the online commercials.

24. In or around February 2015, it came to Plaintiff's attention that Defendants and/or their agents had produced and distributed the infringing Miss Cleo marketing campaign for French Toast Crunch Cereal without Plaintiff's authorization.

25. Specifically, upon information and belief, in or around December 2014, Defendants and/or their agents produced, distributed, and publicly made available an infringing video commercial entitled "Bowl", to promote the availability of French Toast Crunch Cereal, that is substantially similar to the Look of the Miss Cleo commercials, tarot cards and other Miss Cleo Creatives of Plaintiff produced in the early 2000's. The video is virtually identical to the dress, set design, and backdrop of Plaintiff's copyrighted materials, including Radar's registered materials. The only difference is that the candles floating like stars in the background of Plaintiff's copyrighted material are replaced with pieces of French Toast Crunch Cereal floating like stars. Defendants took these actions without Plaintiff's authorization (the "First Infringing Advertisement").

26. Upon information and belief, in or around December 2014, Defendants and/or their agents produced, distributed, and publicly made available an infringing video commercial entitled "Milk" to promote the availability of French Toast Crunch Cereal, that is substantially similar, to Plaintiff's Miss Cleo Creatives. Defendants did so without Plaintiff's authorization (the "Second Infringing Advertisement").

27. Upon information and belief, in or around December 2014, Defendants and/or their agents produced, distributed, and publicly made available an infringing video commercial entitled "Spoon", to promote the availability of French Toast Crunch Cereal, that is substantially similar to Plaintiff's Miss Cleo Creatives. Defendants did so without Plaintiff's authorization (the "Third Infringing Advertisement").

28. Upon information and belief, in or around January 2015, Defendants and/or their agents produced, distributed, and publicly made available an infringing mobile app for a "Miss Cleo Online Interactive Reading", to promote the availability of French Toast Crunch Cereal,

that is substantially similar to Plaintiff's Miss Cleo Creatives. Defendants did so without Plaintiff's authorization (the "Fourth Infringing Advertisement").

29. Upon information and belief, in or around January 2015, Defendants and/or their agents produced, distributed, and publicly made available an infringing desktop app for a "Miss Cleo Online Interactive Reading" to promote the availability of French Toast Crunch Cereal that is substantially similar to Plaintiff's Miss Cleo Creatives. Defendants did so without Plaintiff's authorization (the "Fifth Infringing Advertisement").

30. Upon information and belief, in or around December 2014 and January 2015, Defendants and their agents produced, distributed, and publicly made available hundreds of pieces of infringing advertisements though social media including Tweets, Vines, .gifs and memes substantially similar to Plaintiff's Miss Cleo Creatives authorization to promote the availability of French Toast Crunch Cereal. Defendants did so without Plaintiff's authorization (the "Sixth to Hundreds of Infringing Advertisements").

31. Upon information and belief, the infringing videos and images appear on YouTube, Tumblr and other sites and promote viewers to visit frenchtoastisback.com, which redirected visitors to Cinnamon Toast Crunch's Tumblr, Facebook and Four Square accounts in order to boost the sales of Cinnamon Toast Crunch Cereal.

32. Upon information and belief, the campaign is so successful that Defendant IPG entered the campaign for a Shorty Award, honoring the best brands and agencies on social media. The entry was in the "Ambassador Celebrity Campaign" category for the use of Miss Cleo. As stated by IPG's McCann New York unit in its entry, summing up the Miss Cleo campaign, "You don't have to be a psychic to know, that French Toast Crunch is flying off the shelves, once again."

## COUNT I

### COPYRIGHT INFRINGEMENT
### PURSUANT TO 17 U.S.C §§ 106 and 501

33. Plaintiff restates and incorporates by reference the allegations contained in paragraphs 1 through 32 as if fully stated herein.

34. Through their conduct as alleged herein, Defendants have infringed Plaintiff's copyrights in Plaintiff's Miss Cleo Creatives by reproducing, distributing, and making available to the public the infringing videos, commercials, memes and other materials without authorization in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501.

35. Defendants' acts of infringement were willful, intentional and purposeful, in disregard of and with indifference to Plaintiff's rights.

36. As a direct and proximate result of the infringement by Defendants, Plaintiff is entitled to damages in an amount to be proven at trial.

37. Plaintiff is also entitled to Defendants' profits attributable to the infringement, pursuant to 17 U.S.C. § 504(b), including an accounting of such profits.

38. Alternatively, the Plaintiff is entitled to maximum statutory damages of $150,000 for each of the hundreds of acts of copyright infringement or such other amount as may be proper under 17 U.S.C. § 504 (c).

39. Plaintiff further is entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505 and otherwise according to law.

40. As a direct and proximate result of Defendants' acts and conduct, Plaintiff has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Plaintiff is informed and believes, and on that basis alleges, that unless enjoined and restrained by this Court, Defendants will continue to infringe Plaintiff's

rights in Plaintiff's Miss Cleo Creatives. Plaintiff is entitled to preliminary and permanent injunctive relief to restrain and enjoin Defendants' continuing and infringing conduct.

## COUNT II

### FALSE DESIGNATION OF ORIGIN
### PURSUANT TO 15 U.S.C. § 1125(a)

41. Plaintiff restates and incorporates by reference the allegations contained in paragraphs 1 through 32 as if fully stated herein.

42. Plaintiff holds valid federal and state common law trademarks for the mark "Miss Cleo" (the "Mark").

43. Defendants have used Plaintiff's Mark in commerce without authorization in connection with the advertising of Defendant General Mills' products in a manner which is likely to cause confusion and to deceive the public into believing that Defendants' products are affiliated with, associated with, sponsored by and/or approved by Plaintiff, and which falsely misrepresents the nature, origin and character of Defendants' products and services as being affiliated with, associated with, sponsored by and/or approved by Plaintiff (the "Infringing Mark").

44. In connection with their commercial advertisements and promotion thereof, Defendants have used words and descriptions that falsely and misleadingly describe their Infringing Mark as being affiliated with, associated with, and/or sponsored by Plaintiff.

45. Defendants' actions constitute false designation of origin which are likely to cause confusion, mistake or deception among consumers as to Defendants' products or services' supposed affiliation, connection or association with Plaintiff, and to give the false or misleading impression as to the origin, sponsorship or approval of Defendants' products or services, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1).

46. Defendants' violations of Section 43(a) of the Lanham Act have been and are knowing, willful, intentional and deliberate.

47. Unless enjoined by the Court, Defendants will continue to violate Plaintiff's rights and cause confusion, mistake, deception and the dilution as to the Mark, thereby causing immediate and irreparable injury to Plaintiff.

48. Plaintiff is entitled to an injunction restraining Defendants, their agents and employees, and all persons acting in concert with any one or more of them, from engaging in any of the foregoing acts pursuant to Section 34 of the Act, 15 U.S.C. §1116.

49. Plaintiff has suffered damages as a proximate result of Defendants' infringing acts and are entitled to recover Defendants' profits attributable to their acts of infringement, along with damages, costs and reasonable attorney's fees, pursuant to 15 U.S.C. §1117(a).

## COUNT III

## FLORIDA UNFAIR COMPETITION

50. Plaintiff restates and incorporates by reference the allegations contained in paragraphs 1 through 32 as if fully stated herein.

51. Defendants, without the consent of Plaintiff, intended to and did trade on the goodwill associated with the Mark, the Look and the Miss Cleo Creatives, willfully and in bad faith, by using them in commerce without Plaintiff's authorization or approval in a false and misleading manner.

52. Defendants' infringing acts as alleged herein have caused and are likely to cause confusion, mistake, and deception to consumers as to the affiliation, connection or association of Defendants with Plaintiff, and as to the origin, sponsorship or approval of Defendants' products

and services, all to the damage and detriment of Plaintiff's reputation and goodwill and dilution of its Mark, the Look and the Miss Cleo Creatives.

53. As a result of Defendants' actions, Plaintiff has suffered damages, and is entitled injunctive relief, an accounting of Defendants' profits, to damages and to costs.

## COUNT IV

### FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

54. Plaintiff restates and incorporates by reference the allegations contained in paragraphs 1 through 32 as if fully stated herein.

55. Defendants, without the consent of Plaintiff, intended to and did trade on the goodwill associated with the Mark, the Look and the Miss Cleo Creatives, willfully and in bad faith, by using them in commerce without Plaintiff's authorization or approval in a false and misleading manner.

56. Defendants' actions constitute unfair and deceptive acts in violation of §501.204, Florida Statutes.

57. As a result of Defendants' actions, Plaintiff has suffered damages, and is entitled injunctive relief, an accounting of Defendants' profits, to damages and to costs.

## COUNT V

### UNJUST ENRICHMENT

58. Plaintiff restates and incorporates by reference the allegations contained in paragraphs 1 through 63 as if fully stated herein.

59. By using the Mark, the Look and the Miss Cleo Creatives to promote the sale of General Mills products, without paying Plaintiff, Defendants obtained a benefit from Plaintiff.

60. Defendants acquired the benefits voluntarily and with full knowledge.

61. Defendant has retained the benefits under such circumstances that make it unjust and inequitable for Defendants to retain the benefits without paying Plaintiff the value of the benefits acquired.

**WHEREFORE**, Plaintiff prays for judgment against Defendants, and each of them, jointly and severally, as follows:

1. For statutory and/or compensatory damages in such amount as may be found, or as otherwise permitted by law;

2. For an accounting of, and the imposition of constructive trust with respect to, Defendants' profits attributable to their infringements of Plaintiff's copyright and trademark.

3. For a preliminary and permanent injunction prohibiting Defendants, and their respective agents, servants, employees, officers, successors, licensees and assigns, and all persons acting in concert or participation with each or any of them, from continuing to infringe Plaintiff's copyright in the Miss Cleo Creatives.

4. For a preliminary and permanent injunction prohibiting Defendants, and their respective agents, servants, employees, officers, successors, licensees and assigns, and all persons acting in concert with each or any of them, from (a) using in any form or manner the name or mark "Miss Cleo"; (b) expressly or impliedly representing themselves or their goods or services as being affiliated in any manner with Plaintiff or as authorized, sponsored, or endorsed by or otherwise connected with Plaintiff; (c) engaging in any conduct which will cause or is likely to cause confusion, mistake or misunderstanding as to the source, affiliation, connection, or association of Defendants or their products or services with Plaintiff or their products or services; or (d) otherwise infringing upon the trademark rights of Plaintiff or unfairly competing with Plaintiff in any manner whatsoever;

5. For the value of the benefits they have acquired from the use of the Mark, the Look and the Miss Cleo Creatives;

6. For prejudgment interest according to law;

7. For Plaintiff's attorneys' fees, costs, and disbursements in this action; and

8. For such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: August 24, 2015

Respectfully submitted,

Andrew Zaron, Esq.
 Florida Bar No.: 965790
Scott Cosgrove, Esq.
 Florida Bar No.: 161365
**LEÓN COSGROVE, LLC**
255 Alhambra Circle, Suite 800
Coral Gables, FL  33134
Tel:  (305) 740-1975
Fax:  (305) 437-8158
Email:  azaron@leoncosgrove.com
Email:  scosgrove@leoncosgrove.com
Email:  anoonan@leoncosgrove.com

By: */s/ Andrew Zaron*
      Andrew Zaron, Esq.

AND

Joel R. Dichter, Esq.
 New York Bar No.:  JD-4445
 *Pro Hac Vice Pending*
**DICHTER LAW, LLC**
488 Madison Ave. 18th Floor
New York, NY 10022
Tel.:  (212) 593-4202
Fax:  (212) 994-5394

By: */s/ Joel R. Dichter*
      Joel R. Dichter, Esq.

*Co-counsel for Plaintiff*